AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
Western District of Texas

**FILED**

November 23, 2021

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: _____

kkc

DEPUTY

In the Matter of the Search of
*(Briefly describe the property to be searched*
*or identify the person by name and address)*

1401 Hangtree Cove
Cedar Park, Texas 78613

)
)
)
)
)
)

Case No.  1:21-mj-965-ML

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

Please see Attachment A.

located in the _____ Western _____ District of _____ Texas _____ , there is now concealed *(identify the person or describe the property to be seized)*:

Please see Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 922(a)(1)(A) | Dealing in firearms without a license |

The application is based on these facts:

Please see attached Affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Cole Flores, Special Agent, ATF
*Printed name and title*

Signed electronically and attested by telephone pursuant to Fed. R. Crim. P. 4.1.

Date: _____ 11/23/2021 _____

_____
*Judge's signature*

City and state:  Austin, Texas

United States Magistrate Judge Mark Lane
*Printed name and title*

## Attachment A

### *Property/Location to Be Searched*

1.     The property to be searched is in the Austin Division of the Western District of Texas, and consists of the residence of Andrew PENNINGTON, located at 1401 Hangtree Cove, Cedar Park, Texas 78613, including structures, improvements, and vehicles located on the property and the curtilage thereof.

2.     The residence is a two-story single-family home constructed of brick masonry and tan siding with a fenced back yard.  The residence is identified by signage reading "1401" affixed/centered above the garage door.  It is further described as Williamson County, Texas  Property ID # R387364, and is legally described as S7125 – Trails at Carriage Hills Sec 3 Revised, BLOCK D, Lot 11.

3.  Two photographs of the residence appear below.





**Attachment B**

***Items to be Searched for and Seized***

The search warrant authorizes officers to search for and seize evidence, fruits, and instrumentalities of the offense of dealing in firearms without a license, in violation of 18 U.S.C. § 922(a)(1)(A) ("the Offense"), including specifically the following:

a. Firearms, ammunition, or firearm parts and accessories;

b. All records, whether physical or electronic, that reference or relate to the manufacture, acquisition, possession, distribution, or disposition of firearms, including but not limited to: ATF Forms 4473, ATF Forms 3310.4, Acquisition & Disposition logs, photographs, inventories, bills of sale, records, receipts, notes, ledgers, letters, emails, call logs, contact lists, text messages, electronic communications, and notes;

c. Financial records in any form that relate to or reflect directly or indirectly the purchase or sale of firearms, ammunition, or firearm parts and accessories, or expenditures related to dealing in firearms (e.g., fees for shipping or advertising), including but not limited to bank records, credit or debit card records, tax returns, money orders, business and/or personal checks, cashier's checks, deposit slips, and account statements;

d. Any records, in whatever form, that identify aiders, abettors, co-conspirators, or facilitators of the Offense;

e. Any records, in whatever form, that reflect the names, physical or mailing addresses, email or other accounts for electronic communications, telephone numbers, or other contact information of aiders, abettors, co-conspirators, or facilitators of the Offense, including but not limited to telephone books, address books, telephone paging devices and the information stored within, cellular/smart telephones, audio tapes contained in telephone answering devices, and electronic organizers and the information stored within;

f. Photographs, audio recordings, and/or video footage, however recorded and stored, that relate to or reflect directly or indirectly any evidence, fruits, or instrumentalities of the Offense;

g. Indicia (including fictitious identification documents) of occupancy, residency, control, and/or ownership of the property or location where any evidence may be found, and of electronic devices that may be found;

h.  Evidence of money and things of value that may be proceeds of the Offense, including but not limited to currency, virtual currency, assets, real property, money orders, jewelry, gems, stocks, bonds, precious metals, gold/silver coins, firearms, stored value cards, other items of value, financial instruments, bank records, titles, deeds, notes, safe deposit box keys, and storage locker receipts;

i.  Material used in the packaging, concealment, and transport of firearms;

j.  Aural or written communications in any form that relate to or reflect the Offense directly or indirectly;

k.  Listings of electronic data, passwords, geographic location data, digital applications, social media records, social media applications, and data revealing dates, times, and locations of PENNINGTON's cell phone usage;

l.  Passwords, passcodes, and other information that may be used to gain access to seized electronic devices and their contents, including but not limited to any installed or accompanying SIM card(s), internal memory, or storage media indicative of demonstrating PENNINGTON's control, custody, and access to the devices; and

m.  Any information, instructions, codes, or software that may be necessary for gaining access to information stored in any seized devices.

United Stated District Court
Western District of Texas
Austin Division

In the matter of the search of:

1401 Hangtree Cove
Cedar Park, Texas 78613

No. A-21-MJ-965-ML

2014 Toyota Tundra with
Texas License Plate CTN3008

*File Under Seal*

**Sealed Affidavit in Support of Application for Search Warrant**

I, Cole Flores, a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), being duly sworn, depose and state the following:

1.   Pursuant to Rule 41 of the Federal Rules of Criminal Procedure, this affidavit supports applications for warrants to search for and seize evidence, fruits, and instrumentalities of numerous instances of dealing in firearms without a license, in violation of 18 U.S.C. § 922(a)(1)(A) ("the Offenses").  As described below, Andrew PENNINGTON of Cedar Park, Texas committed the Offenses, and the search warrants are part of an ongoing investigation into PENNINGTON's crimes.

2.   The government is seeking two search warrants:  one for PENNINGTON's residence, located at 1401 Hangtree Cove, Cedar Park, Texas 78613 ("1401 Hangtree"); and one for PENNINGTON's vehicle, a 2014 Toyota Tundra pickup truck with Texas license plate CTN3008 ("the 2014 Tundra"), wherever it may be found in the Western District of Texas.

3.   Attachment A to each of the search warrants describes in detail the location or property to be searched.  Attachment B to each of the search warrants describes in detail the items to be searched for and seized.

**Sealed Search Warrant Affidavit**                                                   **Page 1**

4.   As set forth below, there is probable cause to believe that searches of 1401 Hangtree and the 2014 Tundra will lead to the discovery and seizure of evidence, fruits, and instrumentalities of the Offenses.

**Affiant's Qualifications**

5.   I have been employed as a Special Agent with ATF since June of 2014, and I have conducted numerous investigations into violations of federal firearms laws.  In doing so, I have conducted physical surveillance, executed search and arrest warrants, and debriefed confidential sources and defendants.

6.   Through my training, education, and experience, I am familiar with the manner in which firearms are illegally obtained, transported, stored, concealed, bartered and disposed of.  I am also familiar with the methods by which individuals who unlawfully deal in firearms attempt to conceal or obscure their activities from law enforcement scrutiny.

7.   I have personally participated in the investigation of the Offenses and am familiar with the facts and circumstances of the case through my investigative actions; from discussions with agents of the ATF and other law enforcement entities; and from my review of records and reports relating to the investigation.  As this affidavit is intended only to present probable cause for issuance of the search warrants, it does not necessarily encompass every aspect of my investigation or state everything I know about the facts revealed by the investigation.

**Probable Cause**

8.   Section 922(a)(1)(A) of Title 18 of the United States Code prohibits any person except a licensed importer, licensed manufacturer, or licensed dealer from engaging in the business of dealing in firearms, or in the course of such business shipping, transporting, or receiving any firearm in interstate or foreign commerce.

9.   The investigation to date has included a number of steps, including undercover controlled firearm purchases from PENNINGTON; reviews of reports to ATF by Federal Firearm Licensee businesses ("FFLs"), concerning PENNINGTON's purchases of 141 known firearms during recent months; and a review of PENNINGTON's texasguntrader.com ads and posts advertising the sale of numerous firearms.

10. Evidence assembled through those investigative steps establishes probable cause to conclude that PENNINGTON has engaged in the business of dealing in firearms without a license, and is continuing to do so; and further that evidence, fruits, and instrumentalities of his offenses can be found at his residence (1401 Hangtree) and in his vehicle (the 2014 Tundra).

11. On 10/19/2021, I conducted a routine query of the Texas Gun Trader ("TGT") website (www.texasguntrader.com), which operates as a secondary online firearm marketplace where private citizens and Federal Firearm Licensees (FFLs) can post/advertise firearms for private and commercial sales.   A cursory review of recent firearm advertisements in and around the Austin, Texas region revealed the postings on the following page, associated with the username "youngandpooor" between 10/16/2021 and 10/19/2021:





12. A review of each "youngandpooor" TGT post summary identified the Contact/Seller as "Andrew," with phone number (901) 488-9850, and a "Meet Location" of Cedar Park, Texas.

13. On that same date, I conducted a TLO Law Enforcement Application phone query of (901) 488-9850 which identified Andrew D. PENNINGTON as the Cingular Wireless phone subscriber, with an associated address of 1401 Hangtree Cove, Cedar Park, Texas 78613.

14. PENNINGTON is further identified as Andrew Darley PENNINGTON, W/M, DOB: 02/21/1984, TXDL # 38024789, FBI # 254322JC5.  A CCH query revealed no known firearm

prohibitions.

15. On that same date, I conducted an ATF NFORCE case management system query of PENNINGTON, which returned negative results, signifying that PENNINGTON was not the subject of another ATF investigation.

16. On that same date, at my request, an ATF Industry Operations Investigator conducted a query of the ATF Firearms Licensing System ("FLS") which returned no FFLs, applications, or information associated with PENNINGTON.  Accordingly, as PENNINGTON is not an FFL, pursuant to 18 U.S.C. § 922(a)(1)(A), it is unlawful for him to engage in the business of dealing in firearms, or in the course of such business to ship, transport, of receive any firearm in interstate or foreign commerce.

17. On that same date, at my request, an ATF Intelligence Research Specialist conducted a Texas Workforce Commission (TWC) query, which identified PENNINGTON's current employer as CDK Global LLC and identified his phone number as (901) 488-9850.  The TWC results further indicated that PENNINGTON received an estimated cumulative total salary of approximately $148,100 from quarter 2 of 2020 through quarter 2 of 2021.

18. I subsequently conducted multiple ATF ETRACE queries which revealed PENNINGTON purchased approximately 131 firearms from various FFLs located in the Austin Division of the Western District of Texas between 05/18/2021 and 10/28/2021.  Of those transactions, 120 firearms were purchased over an 82-day period as follows:

|     | Make       | Model | Caliber | Type   | Serial Number | Date Purchased | FFL        |
|-----|------------|-------|---------|--------|---------------|----------------|------------|
| 1.  | Glock GMBH | 44    | .22     | Pistol | AFGG199       | 10/14/2021     | Lark Arms  |
| 2.  | Glock GMBH | 44    | .22     | Pistol | AFHW101       | 10/14/2021     | Lark Arms  |
| 3.  | Glock GMBH | 44    | .22     | Pistol | AFBZ418       | 10/14/2021     | Lark Arms  |

|  | Make | Model | Caliber | Type | Serial Number | Date Purchased | FFL |
|---|---|---|---|---|---|---|---|
| 4. | Glock GMBH | 44 | .22 | Pistol | AFGF958 | 10/14/2021 | Lark Arms |
| 5. | HS Produkt | Hellcat | 9mm | Pistol | BA320950 | 10/14/2021 | Lark Arms |
| 6. | Taurus | PT111 | 9mm | Pistol | TRK85153 | 10/14/2021 | Lark Arms |
| 7. | Taurus | G3C | 9mm | Pistol | ACE897304 | 10/14/2021 | Lark Arms |
| 8. | Taurus | G2C | 9mm | Pistol | ACG086229 | 10/14/2021 | Lark Arms |
| 9. | Taurus | G2C | 9mm | Pistol | ACJ221697 | 10/14/2021 | Lark Arms |
| 10. | Taurus | G2C | 9mm | Pistol | ACG086071 | 10/14/2021 | Lark Arms |
| 11. | Taurus | G2C | 9mm | Pistol | TMS79570 | 10/14/2021 | Lark Arms |
| 12. | Taurus | G2S | 9mm | Pistol | ACH113694 | 10/14/2021 | Lark Arms |
| 13. | Pietro Beretta | 92X Performance | 9mm | Pistol | 92X0041226 | 10/14/2021 | Lark Arms |
| 14. | SC Nova SRL | PAK-9 | 9mm | Pistol | RONVMB71811666 | 10/14/2021 | Lark Arms |
| 15. | American Tactical Imports | Omni Hybrid | 5.56mm | Pistol | NS297680 | 10/14/2021 | Lark Arms |
| 16. | S&W | M&P 380 Shield EZ M2.0 | .380 | Pistol | RJT7100 | 10/06/2021 | Lark Arms |
| 17. | S&W | M&P 9 Shield | 9mm | Pistol | REA9949 | 10/06/2021 | Lark Arms |
| 18. | S&W | M&P 9 Shield | 9mm | Pistol | NKN0522 | 10/06/2021 | Lark Arms |
| 19. | S&W | M&P 9 Shield | 9mm | Pistol | REA9930 | 10/06/2021 | Lark Arms |
| 20. | S&W | M&P 9 Shield | 9mm | Pistol | REA9954 | 10/06/2021 | Lark Arms |
| 21. | Taurus | G2C | 9mm | Pistol | ACG005480 | 10/06/2021 | Lark Arms |
| 22. | Taurus | G2C | 9mm | Pistol | ACJ221457 | 10/06/2021 | Lark Arms |
| 23. | Taurus | G2C | 9mm | Pistol | ACJ221399 | 10/06/2021 | Lark Arms |
| 24 | Taurus | G2C | 9mm | Pistol | ACE914601 | 10/06/2021 | Lark Arms |
| 25 | Taurus | G2C | 9mm | Pistol | ACE914810 | 10/06/2021 | Lark Arms |

|  | Make | Model | Caliber | Type | Serial Number | Date Purchased | FFL |
|---|---|---|---|---|---|---|---|
| 26. | Taurus | G2C | 9mm | Pistol | ACE914802 | 10/06/2021 | Lark Arms |
| 27. | Taurus | G2S | 9mm | Pistol | TMA11760 | 10/06/2021 | Lark Arms |
| 28. | Beretta USA | 92X | 9mm | Pistol | 92X0041272 | 10/06/2021 | Lark Arms |
| 29. | Beretta USA | 92X | 9mm | Pistol | 92X0041188 | 10/06/2021 | Lark Arms |
| 30. | Beretta USA | 92X | 9mm | Pistol | 92X0040787 | 10/06/2021 | Lark Arms |
| 31. | Beretta USA | 92X | 9mm | Pistol | 92X0041273 | 10/06/2021 | Lark Arms |
| 32. | Beretta USA | 92X | 9mm | Pistol | 92X0041302 | 10/06/2021 | Lark Arms |
| 33. | Beretta USA | 92FS | 9mm | Pistol | A281831Z | 10/06/2021 | Lark Arms |
| 34. | Beretta USA | 92FS | 9mm | Pistol | A281809Z | 10/06/2021 | Lark Arms |
| 35. | CZ | P-10 | 9mm | Pistol | E031249 | 10/06/2021 | Lark Arms |
| 36. | SC Nova SRL | PAK-9 | 9mm | Pistol | RON2126939 | 09/24/2021 | Lark Arms |
| 37. | Taurus | G2S | 9mm | Pistol | ACH147910 | 09/24/2021 | Lark Arms |
| 38. | Pietro Beretta | 92FS | 9mm | Pistol | A281321Z | 09/24/2021 | Lark Arms |
| 39. | Pietro Beretta | 92FS | 9mm | Pistol | A281841Z | 09/24/2021 | Lark Arms |
| 40. | Beretta USA | 92X | 9mm | Pistol | 92X0041288 | 09/24/2021 | Lark Arms |
| 41. | Taurus Intl | G2C | 9mm | Pistol | ACH095882 | 09/24/2021 | Lark Arms |
| 42. | SC Nova SRL | PAK-9 | 9mm | Pistol | RON2126947 | 09/24/2021 | Lark Arms |
| 43. | Taurus Intl | G2C | 9mm | Pistol | ACG004840 | 09/24/2021 | Lark Arms |
| 44. | Taurus Intl | GX4 | 9mm | Pistol | 1GA19521 | 09/24/2021 | Lark Arms |
| 45. | Beretta USA | 92X | 9mm | Pistol | A281505Z | 09/24/2021 | Lark Arms |
| 46. | Beretta USA | 92X | 9mm | Pistol | 92X0041190 | 09/24/2021 | Lark Arms |
| 47. | Beretta USA | 92X | 9mm | Pistol | 92X0041253 | 09/24/2021 | Lark Arms |
| 48. | Beretta USA | 92X | 9mm | Pistol | 92X0040473 | 09/24/2021 | Lark Arms |

**Sealed Search Warrant Affidavit**                                   **Page 7**

| | Make | Model | Caliber | Type | Serial Number | Date Purchased | FFL |
|---|---|---|---|---|---|---|---|
| 49. | Beretta USA | 92X | 9mm | Pistol | 92X0041204 | 09/24/2021 | Lark Arms |
| 50. | Taurus | G2C | 9mm | Pistol | ACG004842 | 09/24/2021 | Lark Arms |
| 51. | Taurus | G2C | 9mm | Pistol | ACG005719 | 09/24/2021 | Lark Arms |
| 52. | Heritage MFG | Barkeep | .22 | Pistol | 1BH467239 | 09/24/2021 | Lark Arms |
| 53. | Taurus | PT111 G2 | 9mm | Pistol | TJS05550 | 09/24/2021 | Lark Arms |
| 54. | Pietro Beretta | 92FS | 9mm | Pistol | A281198Z | 09/10/2021 | Lark Arms |
| 55. | Pietro Beretta | 92FS | 9mm | Pistol | A283610Z | 09/10/2021 | Lark Arms |
| 56. | Taurus | G2C | 9mm | Pistol | 1C070302 | 09/10/2021 | Lark Arms |
| 57. | Taurus | G2C | 9mm | Pistol | 1C070303 | 09/10/2021 | Lark Arms |
| 58. | Taurus | G2C | 9mm | Pistol | ACE893616 | 09/10/2021 | Lark Arms |
| 59. | Pietro Beretta | 92A1 | 9mm | Pistol | A2785442 | 09/03/2021 | Lark Arms |
| 60. | Pietro Beretta | 92FS | 9mm | Pistol | A281196Z | 09/03/2021 | Lark Arms |
| 61. | Pietro Beretta | 92FS | 9mm | Pistol | A281071Z | 09/03/2021 | Lark Arms |
| 62. | Pietro Beretta | 92FS | 9mm | Pistol | A281073Z | 09/03/2021 | Lark Arms |
| 63. | Pietro Beretta | 92FS | 9mm | Pistol | A281810Z | 09/03/2021 | Lark Arms |
| 64. | Pietro Beretta | 92FS | 9mm | Pistol | A281834Z | 09/03/2021 | Lark Arms |
| 65. | Glock GMBH | 17 Gen 5 | 9mm | Pistol | ABPV330 | 08/31/2021 | Lark Arms |
| 66. | Pietro Beretta | 92A1 | 9mm | Pistol | A279099Z | 08/31/2021 | Lark Arms |
| 67. | Pietro Beretta | 92FS | 9mm | Pistol | A283503Z | 08/31/2021 | Lark Arms |
| 68. | Pietro Beretta | 92FS | 9mm | Pistol | A2835252 | 08/31/2021 | Lark Arms |
| 69. | Pietro Beretta | 92FS | 9mm | Pistol | A283500Z | 08/19/2021 | Lark Arms |
| 70. | Pietro Beretta | 92A1 | 9mm | Pistol | A254820Z | 08/19/2021 | Lark Arms |
| 71. | Pietro Beretta | 92FS | 9mm | Pistol | A283504Z | 08/19/2021 | Lark Arms |

**Sealed Search Warrant Affidavit**                                            **Page 8**

|  | Make | Model | Caliber | Type | Serial Number | Date Purchased | FFL |
|---|---|---|---|---|---|---|---|
| 72. | Pietro Beretta | 92FS | 9mm | Pistol | A283501Z | 08/19/2021 | Lark Arms |
| 73. | Pietro Beretta | 92FS | 9mm | Pistol | A281066Z | 08/19/2021 | Lark Arms |
| 74. | Pietro Beretta | 92A1 | 9mm | Pistol | A254833Z | 08/19/2021 | Lark Arms |
| 75. | Taurus | G2C | 9mm | Pistol | ACD765814 | 08/19/2021 | Lark Arms |
| 76. | Taurus | G2C | 9mm | Pistol | ACC999650 | 08/19/2021 | Lark Arms |
| 77. | Taurus | G2C | 9mm | Pistol | ACE853539 | 08/19/2021 | Lark Arms |
| 78. | Radical Arms | RF-15 | 5.56mm | Rifle | 21-033115 | 08/08/2021 | GUN FXR |
| 79. | Radical Arms | RF-15 | 5.56mm | Rifle | 21-033229 | 08/08/2021 | GUN FXR |
| 80. | Radical Arms | RF-15 | 5.56mm | Rifle | 21-035547 | 08/08/2021 | GUN FXR |
| 81. | Radical Arms | RF-15 | 5.56mm | Rifle | 21-035704 | 08/08/2021 | GUN FXR |
| 82. | Radical Arms | RF-15 | 5.56mm | Rifle | 21-033447 | 08/08/2021 | GUN FXR |
| 83. | Radical Arms | RF-15 | 5.56mm | Rifle | 21-035514 | 08/08/2021 | GUN FXR |
| 84. | Radical Arms | RF-15 | 5.56mm | Rifle | 21-034485 | 08/08/2021 | GUN FXR |
| 85. | Radical Arms | RF-15 | 5.56mm | Rifle | 21-031183 | 08/08/2021 | GUN FXR |
| 86. | Radical Arms | RF-15 | 5.56mm | Rifle | 21-034605 | 08/08/2021 | GUN FXR |
| 87. | Radical Arms | RF-15 | 5.56mm | Rifle | 21-036012 | 08/08/2021 | GUN FXR |
| 88. | Pietro Beretta | 92 FS | 9mm | Pistol | BER788553 | 08/07/2021 | Lark Arms |
| 89. | Pietro Beretta | 92 A1 | 9mm | Pistol | A278419Z | 08/07/2021 | Lark Arms |
| 90. | Glock | G37 | .45 | Pistol | RHY940 | 05/18/2021 | White Orca Tactical |
| 91. | Glock | G37 | .45 | Pistol | RHY941 | 05/18/2021 | White Orca Tactical |
| 92. | Glock | G37 | .45 | Pistol | RHY942 | 05/18/2021 | White Orca Tactical |
| 93. | Glock | G37 | .45 | Pistol | RHY938 | 05/18/2021 | White Orca Tactical |

|  | Make | Model | Caliber | Type | Serial Number | Date Purchased | FFL |
|---|---|---|---|---|---|---|---|
| 94. | Glock | G37 | .45 | Pistol | RHY939 | 05/18/2021 | White Orca Tactical |
| 95. | HS Produkt | Hellcat | 9mm | Pistol | BA431397 | 10/28/2021 | Lark Arms |
| 96. | HS Produkt | Hellcat | 9mm | Pistol | BA431367 | 10/28/2021 | Lark Arms |
| 97. | HS Produkt | Hellcat | 9mm | Pistol | BA431365 | 10/28/2021 | Lark Arms |
| 98. | HS Produkt | Hellcat | 9mm | Pistol | BA431345 | 10/28/2021 | Lark Arms |
| 99. | HS Produkt | Hellcat | 9mm | Pistol | BA431393 | 10/28/2021 | Lark Arms |
| 100. | HS Produkt | Hellcat | 9mm | Pistol | BA431393 | 10/28/2021 | Lark Arms |
| 101. | Taurus | G2C | 9mm | Pistol | TJP01188 | 10/28/2021 | Lark Arms |
| 102. | Taurus | G2C | 9mm | Pistol | ABM310207 | 10/28/2021 | Lark Arms |
| 103. | Taurus | G2C | 9mm | Pistol | 1C080602 | 10/28/2021 | Lark Arms |
| 104. | Taurus | G2C | 9mm | Pistol | 1C080591 | 10/28/2021 | Lark Arms |
| 105. | Taurus | G2C | 9mm | Pistol | 1C080419 | 10/28/2021 | Lark Arms |
| 106. | Taurus | G2C | 9mm | Pistol | 1C080599 | 10/28/2021 | Lark Arms |
| 107. | Taurus | G2C | 9mm | Pistol | 1C080696 | 10/28/2021 | Lark Arms |
| 108. | Taurus | G2C | 9mm | Pistol | 1C072678 | 10/28/2021 | Lark Arms |
| 109. | Taurus | G2C | 9mm | Pistol | 1C072670 | 10/28/2021 | Lark Arms |
| 110. | Taurus | G2C | 9mm | Pistol | 1C080589 | 10/28/2021 | Lark Arms |
| 111. | Taurus | G2C | 9mm | Pistol | 1C080607 | 10/28/2021 | Lark Arms |
| 112. | Taurus | G2C | 9mm | Pistol | 1C080375 | 10/28/2021 | Lark Arms |
| 113. | Taurus | G2C | 9mm | Pistol | 1C080689 | 10/28/2021 | Lark Arms |
| 114. | Taurus | G2C | 9mm | Pistol | 1C080588 | 10/28/2021 | Lark Arms |
| 115. | Taurus | G2C | 9mm | Pistol | 1C080592 | 10/28/2021 | Lark Arms |

**Sealed Search Warrant Affidavit**                                        **Page 10**

| | Make | Model | Caliber | Type | Serial Number | Date Purchased | FFL |
|---|---|---|---|---|---|---|---|
| 116. | Taurus | PT111 | 9mm | Pistol | TG056157 | 10/28/2021 | Lark Arms |
| 117. | Taurus | PT111 | 9mm | Pistol | TJN12067 | 10/28/2021 | Lark Arms |
| 118. | Taurus | G3C | 9mm | Pistol | ACG055388 | 10/28/2021 | Lark Arms |
| 119. | Pietro Beretta | 92X FR | 9mm | Pistol | 92X0042160 | 10/28/2021 | Lark Arms |
| 120. | Pietro Beretta | 92X FR | 9mm | Pistol | 92X0041427 | 10/28/2021 | Lark Arms |
| 121. | Pietro Beretta | 92X FR | 9mm | Pistol | 92X0043818 | 10/28/2021 | Lark Arms |
| 122. | Pietro Beretta | 92X FR | 9mm | Pistol | 92X0043369 | 10/28/2021 | Lark Arms |
| 123. | Pietro Beretta | 92X FR | 9mm | Pistol | 92X0044696 | 10/28/2021 | Lark Arms |
| 124. | Pietro Beretta | 92A1 | 9mm | Pistol | A073231Z | 10/28/2021 | Lark Arms |
| 125. | Pietro Beretta | 92FS | 9mm | Pistol | A283791Z | 10/28/2021 | Lark Arms |
| 126. | Radical Arms | RF-15 | 5.56mm | Rifle | 21-033640 | 06/15/2021 | White Orca Tactical |
| 127. | Radical Arms | RF-15 | 5.56mm | Rifle | 21-033487 | 06/15/2021 | White Orca Tactical |
| 128. | Radical Arms | RF-15 | 5.56mm | Rifle | 21-034140 | 06/15/2021 | White Orca Tactical |
| 129. | Radical Arms | RF-15 | 5.56mm | Rifle | 21-034740 | 06/15/2021 | White Orca Tactical |
| 130. | Radical Arms | RF-15 | 5.56mm | Rifle | 21-033319 | 06/15/2021 | White Orca Tactical |
| 131. | Radical Arms | RF-15 | 5.56mm | Rifle | 21-035711 | 06/15/2021 | White Orca Tactical |
| 132. | Beretta | 92FS | 9mm | Pistol | A283617Z | 11/17/2021 | Lark Arms |
| 133. | Beretta | 92FS | 9mm | Pistol | A284183Z | 11/17/2021 | Lark Arms |
| 134. | Beretta | 92X F | 9mm | Pistol | 92XX0041303 | 11/17/2021 | Lark Arms |
| 135. | Beretta | 92A1 | 9mm | Pistol | A277438Z | 11/17/2021 | Lark Arms |
| 136. | Taurus | G2C | 9mm | Pistol | 725327616030 | 11/17/2021 | Lark Arms |

|  | Make | Model | Caliber | Type | Serial Number | Date Purchased | FFL |
|---|---|---|---|---|---|---|---|
| 137. | Taurus | G2C | 9mm | Pistol | 1C033674 | 11/17/2021 | Lark Arms |
| 138. | Taurus | G2C | 9mm | Pistol | ACJ217247 | 11/17/2021 | Lark Arms |
| 139. | Taurus | G2C | 9mm | Pistol | ACH141860 | 11/17/2021 | Lark Arms |
| 140. | Taurus | 605 | 9mm | Revolver | ACA449952 | 11/17/2021 | Lark Arms |
| 141. | Palmetto State Armory | PA-15 | 5.56mm | Pistol | PT063603 | 11/17/2021 | Lark Arms |

19. I also conducted ongoing periodic reviews of PENNINGTON's TGT activity (username: "youngandpooor") which revealed numerous posted sales ads for the same make/model firearms PENNINGTON previously purchased via multiple sales to include but not limited to the following:



| | | | |
|---|---|---|---|
|  | Italian Beretta 92A1 9mm 2-17rd Mags BRAND NEW! | $865.00 | 11/17/21 |
|  | Beretta 92X Centurion RDO 9mm BRAND NEW Cedar Park | $845.00 | 11/17/21 |
|  | Taurus G2C 9mm BRAND NEW!! Cedar Park | $365.00 | 11/17/21 |
|  | Beretta 92X Centurion RDO 9mm BRAND NEW Cedar Park | $845.00 | 11/17/21 |

*Blank Space*

**ALL LISTINGS FOR: youngandpooor**

| Photo | Title | Price | Entry Date |
|---|---|---|---|
|  | Romanian AK BRAND NEW! Cedar Park | $845.00 | 11/15/21 |
|  | Springfield Hellcat OSP 9mm BRAND NEW! Cedar Park | $645.00 | 11/15/21 |
|  | Beretta 92X Centurion RDO 9mm BRAND NEW Cedar Park | $845.00 | 11/15/21 |
|  | Taurus G2C 9mm BRAND NEW!! Cedar Park | $365.00 | 11/15/21 |
|  | Taurus G2C 9mm BRAND NEW!! Cedar Park | $365.00 | 11/14/21 |
|  | Beretta 92X Centurion RDO 9mm BRAND NEW Cedar Park | $845.00 | 11/14/21 |
|  | Springfield Hellcat OSP 9mm BRAND NEW! Cedar Park | $645.00 | 11/14/21 |
|  | Romanian AK BRAND NEW! Cedar Park | $845.00 | 11/14/21 |

| ALL LISTINGS FOR: youngandpooor | | | |
|---|---|---|---|
| Photo | Title | Price | Entry Date |
|  | Taurus G2C 9mm BRAND NEW!! Cedar Park | $365.00 | 11/7/21 |
|  | Romanian AK 9mm BRAND NEW! Cedar Park | $845.00 | 11/7/21 |
|  | Springfield Hellcat OSP 9mm BRAND NEW! Cedar Park | $645.00 | 11/7/21 |
|  | Italian Beretta 92A1 9mm! Cedar Park | $845.00 | 11/7/21 |

| | | | |
|---|---|---|---|
|  | Romanian PK9 9mm with 4-30rd mags Magpul Grip!! | $845.00 | 11/7/21 |
|  | Beretta 92X Centurion RDO 9mm BRAND NEW Cedar Park | $845.00 | 11/7/21 |
|  | Italian Beretta 92A1 9mm! Cedar Park | $845.00 | 11/6/21 |
|  | Taurus G2C 9mm BRAND NEW!! Cedar Park | $365.00 | 11/6/21 |
|  | Beretta 92X Centurion RDO 9mm BRAND NEW Cedar Park | $865.00 | 11/6/21 |
|  | Romanian PK9 9mm with 4-30rd mags Magpul Grip!! | $845.00 | 11/6/21 |

| ALL LISTINGS FOR: **youngandpooor** | | | |
|---|---|---|---|
| Photo | Title | Price | Entry Date |
|  | Romanian PK9 9mm with 4-30rd mags Magpul Grip!! | $845.00 | 11/4/21 |
|  | Romanian AK 9mm BRAND NEW! Cedar Park | $845.00 | 11/4/21 |
|  | Beretta 92X Centurion RDO 9mm BRAND NEW Cedar Park | $865.00 | 11/4/21 |
|  | Springfield Hellcat OSP 9mm BRAND NEW! Cedar Park | $645.00 | 11/4/21 |

| | | | |
|---|---|---|---|
|  | Taurus G2C 9mm BRAND NEW!! Cedar Park | $365.00 | 11/4/21 |
|  | Taurus G2C 9mm BRAND NEW!! Cedar Park | $365.00 | 11/2/21 |
|  | Springfield Hellcat OSP 9mm BRAND NEW! Cedar Park | $645.00 | 11/2/21 |
|  | Beretta 92X Centurion RDO 9mm BRAND NEW Cedar Park | $865.00 | 11/2/21 |
|  | Beretta 92X Centurion RDO 9mm BRAND NEW Cedar Park | $865.00 | 11/1/21 |
|  | Springfield Hellcat OSP 9mm BRAND NEW! Cedar Park | $645.00 | 11/1/21 |

**Sealed Search Warrant Affidavit**                                                          **Page 16**





20. On 10/27/2021, I conducted surveillance of 1401 Hangtree, at which time the 2014 Tundra and a white 2018 Chevrolet Trax with Texas license plate KRX7553 ("the 2018 Trax") were observed parked in the driveway.  A subsequent NCIC/NLETS vehicle registration query confirmed the 2014 Tundra is registered to PENNINGTON.

21. On that same date, I conducted a Williamson County Central Appraisal District property query of the 1401 Hangtree, which confirmed the property is owned by PENNINGTON.

22. On 11/02/2021, an ATF Special Agent (SA) acting in an undercover (UC) capacity established text contact with PENNINGTON via (901) 488-9850 and arranged to purchase a HS Produkt (Springfield Armory) model Hellcat 9mm pistol, which PENNINGTON had advertised for sale on that same date via his TGT account "youngandpooor" under Listing ID #2039564.

23. On 11/03/2021, members of the ATF Austin Field Office and the Texas Department of Public Safety ("DPS") briefed the planned execution of the controlled purchase at the ATF Austin Field Office.  During the briefing, UC received ATF Agent Cashier funds (which were photocopied upon disbursement) to facilitate the purchase of the firearm.

24. At approximately 11:20 am, ATF initiated pre-operation surveillance of 1401 Hangtree, at which time the 2018 Trax was observed parked in the residential driveway.  The 2014 Tundra was not observed at the residence.  At approximately 12:00 pm, agents established pre-operation surveillance of the meet location (located approximately one mile southeast of 1401 Hangtree).

25. At approximately 11:56 am, PENNINGTON indicated via text that he was enroute to the meet location and stated he was driving a silver Tundra (pickup truck).

26. At approximately 12:25 pm, PENNINGTON arrived at the meet location in the 2014 Tundra and parked adjacent to the UC vehicle.  PENNINGTON exited the Tundra and entered the front passenger seat of the UC vehicle.  Thereafter the audio/video recorded firearm

**Sealed Search Warrant Affidavit**                                                **Page 18**

transaction was completed, resulting in the purchase of HS Produkt (Springfield Armory) model Hellcat 9mm pistol, SN: BA431345 for a total of $645.00 cash.

27. PENNINGTON purchased the same HS Produkt Hellcat pistol from Lark Arms FFL on 10/28/2021 – identified as firearm # 98 in the above firearm list.

28. In addition to the firearm, PENNINGTON provided the UC a cardboard Springfield Armory gun box labeled for a model Hellcat 9mm pistol, SN: BA431345, two pistol magazines (1 – 13 round, 1 – 11 round), a soft pistol case, and miscellaneous accessories.

29. During the course of the transaction, PENNINGTON presented UC with a pre-typed Firearm Bill of Sale, which UC completed per PENNINGTON's request, memorializing the firearm transaction.

30. The pre-typed sections of the Bill of Sale included the firearm description and the "Seller" field, which identified "Andrew Pennington" as the seller with an address of "1401 Hangtree Cv., Cedar Park, Texas 78613," CWL # "06105655," and Contact # "901-488-9850." Upon completion, PENNINGTON took a digital photo of the Bill of Sale with his cell phone.

31. PENNINGTON also made the following statements, in sum and substance:

    a.    He stated he lives in Cedar Park (Texas) and later elaborated that he lives near Lakeline (Blvd.) and Whitestone (Blvd.).

    b.    He stated the firearm is "brand new" and indicated it had never been fired.

    c.    He stated, "I'm a dealer so I sell a bunch of this stuff."

    d.    In response to UC's query regarding PENNINGTON's other available firearm inventory, he stated, "I've got some Taurus pistols right now…  I've got some Berettas…  I got an FN 509 Tactical…  Got a bunch of ARs…  Got a bunch of AKs…  Got some home defense shotguns…"

e.    In response to UC's query regarding filling out the Firearm Bill of Sale, he stated, "This is how legal transactions work peer-to-peer…  If I didn't get your information it would still be in my name…  But it will still be in my name, but if the ATF comes to me because the firearm was involved in a… criminal activity or something, I would go to jail because it's in my name unless I have this information."

f.    He stated he has a concealed handgun license.

g.    In reference to the Firearm Bill of Sale, he stated, "I just take a picture of it just when if there is an issue in the future…  It's very standard…  If you were ever to do a deal without it I would be suspect because… what they could be selling you could already be involved in criminal activity…  So the transfer of the serial number is a big deal."

32. The transaction concluded at approximately 12:34 pm.  PENNINGTON then departed the meet location in the Toyota Tundra and traveled south on Lakeline Blvd. before going unsighted.

33. On that same date, I conducted a test-fire of the HS Produkt Hellcat pistol with positive results.  I determined that the firearm was capable of expelling a projectile by the action of an explosive pursuant to 18 U.S.C. § 921(a)(3).  I also conducted an NCIC Stolen Firearm query of the HS Produkt Hellcat pistol, which returned negative results, indicating the firearm had not been reported stolen to law enforcement.

34. I subsequently consulted with ATF SA Daniel Mueller, who is an Interstate Nexus expert qualified in the identification of firearms and the date and place of their manufacture.  SA Mueller examined the HS Produkt Hellcat pistol and determined that it was manufactured outside of the State of Texas; therefore, it affected interstate and/or foreign commerce prior to its recovery in the Western District of Texas on 11/03/2021.

35. On 11/15/2021, an ATF Special Agent acting in an undercover (UC) capacity established

text contact with PENNINGTON via (901) 488-9850 and arranged to purchase a Taurus model G2C 9mm pistol, which PENNINGTON advertised for sale on that same date via his texasguntrader.com account ID "youngandpooor."

36. On 11/16/2021, members of the ATF Austin Field Office and DPS briefed the planned execution of the controlled purchase at the ATF Austin Field Office.  During the briefing, UC received ATF Agent Cashier funds (which were photocopied upon disbursement) to facilitate the purchase of the firearm.

37. At approximately 8:34 am, ATF initiated pre-operation surveillance of 1401 Hangtree, at which time the 2014 Tundra and the 2018 Trax were observed parked in the driveway.  At approximately 8:57 am, an unknown female entered the 2018 Trax and departed the residence. The unknown female returned to the residence at approximately 10:42 am.   At approximately 11:45 am, agents established pre-operation surveillance of the meet location (approximately one mile southeast of 1401 Hangtree).

38. At approximately 12:01 pm, PENNINGTON exited 1401 Hangtree and appeared to place a gun box in the back seat of the 2014 Tundra.  PENNINGTON then departed the residence in the Tundra and traveled directly to the meet location.  Upon arrival, PENNINGTON parked adjacent to the UC vehicle, exited his vehicle, and met with UC at the rear of the Tundra. Thereafter the audio/video recorded firearm transaction was completed on the tailgate of the Tundra, resulting in the purchase of Taurus model G2C 9mm pistol, SN: 1C080599 for a total of $350.00 cash.

39. PENNINGTON purchased the same Taurus G2C pistol from Lark Arms FFL on 10/28/2021 – identified as firearm # 106 in the above firearm list.

40. In addition to the firearm, PENNINGTON provided the UC with a cardboard Taurus gun

box labeled for a model G2C 9mm pistol, SN: 1C080599, two 12-round pistol magazines, a Taurus firearm manual, and a firearm lock.

41. During the course of the transaction, PENNINGTON presented UC with a pre-typed Firearm Bill of Sale, which UC completed per PENNINGTON's request, memorializing the firearm transaction.

42. The pre-typed sections of the Bill of Sale included the firearm description and the "Seller" field, which identified "Andrew Pennington" as the seller with an address of "1505 W Whitestone Blvd, Cedar Park, TX 78613," CWL # "06105655," and Contact # "901-488-9850." Upon completion, PENNINGTON took a digital photo of the Bill of Sale with his cell phone.

43. PENNINGTON also made the following statements in summary:

    a.   He introduced himself as "Andrew."

    b.   In response to UC's query whether the firearm was new, he stated, "Brand new… I'm a dealer… so I only sell brand new stuff..."

    c.   He stated, "If I got used stuff it's only because it was a trade…"

    d.   In response to UC's query whether PENNINGTON had a firearm storefront, he stated, "Not really… not internet… just kind of peer to peer…"

    e.   In response to UC's query regarding firearm pricing, he stated, "They're brand new… they usually come in an orange box… but I just got these in stock…  I didn't really have much room..."

    f.   Upon completion of the Firearm Bill of Sale, he stated, "I'm going to let you keep this…  I'm just going to take a picture for my records..."

    g.   He stated, "If you need anything else let me know… I do firearms and

ammunition…"

     h.   In response to UC's query whether PENNINGTON had any Glock model 43 pistols, he stated, "Yeah I can get you one…  I'll send you some information with some pricing and just let me know and I can order it for you…"

     i.   In response to UC's query regarding turnaround-time for ordering a Glock 43 pistol, he stated, "Usually a week…  I can order it that day…  They ship it the day after… Usually 2 to 3 days shipping… So usually a week turnaround…"

44. The transaction concluded at approximately 12:10 pm, at which time PENNINGTON departed the meet location in the Toyota Tundra and traveled directly back to his residence.

45. On that same date, I conducted a test-fire of the Taurus G2C pistol with positive results.  . I determined that the firearm was capable of expelling a projectile by the action of an explosive pursuant to 18 U.S.C. § 921(a)(3).  I also conducted an NCIC Stolen Firearm query of the Taurus G2C pistol, which returned negative results, indicating that the firearm had not been reported stolen to law enforcement.

46. I subsequently consulted with ATF SA Daniel Mueller, who is an Interstate Nexus expert qualified in the identification of firearms and the date and place of their manufacture.  SA Mueller examined the Taurus G2C pistol and determined that it was manufactured outside of the State of Texas, thereby affecting interstate and or foreign commerce prior to its 11/16/2021 recovery in the Western District of Texas.

47. In addition to the preceding, based on my training and experience, I am also aware of the following:

     a.   The following are indicators of dealing in firearms without a license:  over approximately a five-month period, PENNINGTON purchased 141 known firearms (an average

of 25+ firearms per month);  on several occasions, PENNINGTON made multiple purchases of the same make/model/caliber firearm from different FFLs within several days (this tactic, spreading out purchases, is utilized to minimize the number of firearms purchased during a single transaction, as to avoid suspicion/scrutiny by law enforcement);  PENNINGTON purchased a large quantity of the same make/model/caliber firearms; and within one to several days of the multiple sale purchases, PENNINGTON posted ads for the same make/model firearms to the TGT website.

b.    PENNINGTON's actions and statements during the UC controlled firearm purchases indicate that he routinely utilizes Firearm Bills of Sale to document his transactions, and further establishes that PENNINGTON utilizes his cell phone to capture digital photos of the forms.  Furthermore, the pre-populated/typed nature of the Bills of Sale indicates PENNINGTON utilizes a computer to fill out and print the forms.  Accordingly, I believe digital evidence of PENNINGTON's activities will be found stored on his cell phone, computers, or other electronic devices kept at the Search Locations.

c.    PENNINGTON's self-identification as a firearms "dealer" is an attempt to legitimize his firearms sales as legal transactions while minimizing suspicion and establishing trust with his prospective customers.  Such tactics are commonly utilized by individuals who engage in the business of dealing in firearms without an FFL.

d.    The unlicensed sale of firearms is generally a profit-motivated crime.  Non-prohibited persons with access and opportunity to purchase firearms often do so with the intent to sell or trade the firearms for monetary gain.

e.    Individuals who unlawfully deal in firearms profit from their sales, and they attempt to legitimize these profits.  To accomplish these goals, these individuals often utilize

false and fictitious business records, cashier's checks, money drafts, letters of credit, and business fronts.

      f.   Individuals who illegally deal in firearms routinely conceal, in their vehicles, in their place of operation, within their residence, and in storage units, evidence relating to obtaining, transferring, secreting, or spending large sums of money made from engaging in bartering, transferring, and selling firearms and other illegal activities.  The evidence includes, but is not limited to, currency, financial instruments, precious metals and gem stones, jewelry, books, records, invoices, receipts, records of real estate transactions, tax returns, Forms W-2, Forms 1099, bank statements, and related records, passbooks, money drafts, letters of credit, loan records, stored value cards, money orders, bank drafts, cashier checks, bank checks, wire transfers, deposit slips, withdraw slips, safe deposit box keys, and money wrappers.

      g.   It is common for individuals who illegally deal in firearms to store and conceal firearms, contraband, proceeds of firearms sales, and records of firearms transactions in secure locations within their residences, places of operation, and/or motor vehicles, for ready access, and to conceal such items from law enforcement authorities.

      h.   Individuals who illegally deal in firearms commonly maintain addresses or telephone numbers in books, papers, or electronically, which reflect names, addresses and/or telephone numbers for associates who help facilitate the crimes and for customers who may be unwitting participants.  In addition, these individuals utilize telephone systems, telephone paging devices, and cellular telephones to maintain contact with their associates and customers in their illegal businesses.  In my training and experience, digital electronic devices such as cellular telephones are commonly utilized.

      i.   Individuals who illegally deal in firearms utilize cellular phones to identify,

research, evaluate, and facilitate obtaining the firearms. Cellular/smart phones, through the use

of voice calls, text/SMS/MMS messaging, and third-party applications, are also utilized to

facilitate and coordinate communications between co-conspirators in furtherance of illegally

obtaining firearms and their subsequent disposition.  Cellular/smart phones are also used to

access social media and networking sites, where proprietary communications systems are

exploited in furtherance of these criminal activities. Additionally, I know that cellular

telephones log location data, to include GPS information, would be valuable evidence of the

Offenses.

       j.     Individuals who illegally deal in firearms make, or cause to be made,

photographs/videos of themselves, their criminal associates, their property, and their illegal

activities.  These individuals usually maintain these photographs/videos in their possession, on

their cellular/smartphones or other electronic storage devices, in their vehicles, at places of

operation, and in their residences.  They also utilize social media applications, sites, and

platforms to document, share, and publicize their activities.  Social media services also record

location data associated with these postings/check-ins/uploads.

       k.     Individuals who illegally deal in firearms utilize motor vehicles or other

conveyances to facilitate the sale, distribution, transference, and secreting of same.  Motor

vehicles are also utilized to enable meetings and deals between co-conspirators, serve as points-

of-sale, and allow for the exchange and delivery of illegal profits derived from the sale and

exchange of illegally sold or trafficked firearms.

       l.     The items described in Attachments B to the search warrants are generally kept

at locations controlled by the individual who owns or possesses them, including in residences,

vehicles, businesses, and electronic storage devices.  Additionally, because these items are

either valuable in themselves or have enduring utility to the owner or possessor, they are often

kept for long periods of time.  Accordingly, although some of the events described in this

affidavit occurred months ago, there is probable cause to believe those items will still be found

at the Search Locations.

### Definitions and Descriptions

48. Sections 922(a)(1)(A), 923(a), and 924(a)(1)(D) of Title 18 of the United States Code

make it unlawful for a person who is not licensed as a dealer to engage willfully in the

business of dealing firearms.  And one "who devotes time, attention, and labor to dealing in

firearms as a regular course of trade or business with the principal objective of livelihood and

profit through the repetitive purchase and resale of firearms" is engaging in the business of

dealing in firearms.  18 U.S.C. § 921(a)(21)(C).  (One who only "makes occasional sales,

exchanges, or purchases of firearms for the enhancement of a personal collection or for a

hobby, or who sells all or part of his personal collection of firearms…" is not engaging in the

business of dealing in firearms.  *Id.*)

49. ETRACE is an internet-based system that allows participating law enforcement

agencies to submit firearm traces to the ATF National Tracing Center (NTC).  In general,

firearm tracing provides records of the movement of firearms recovered by law enforcement

officials from the first sale by the manufacturer or importer through the distribution chain

(wholesale/retailer) to the first retail purchase.  ETRACE is also used to document the sale or

disposition of two (2) or more firearms (multiple sales) if the sale occurs at the same time or

within five (5) consecutive business days of each other.   ETRACE does not include single

purchases or secondary market purchases.

50. A Firearms Transaction Record, known as an ATF Form 4473, is a form promulgated by ATF and required by law to be filled in when a person purchases a firearm from an FFL holder.  Amon other thing, it states:  "I further understand that the repetitive purchase of firearms for the purpose of resale for livelihood and profit without a Federal Firearms License is a violation of law…"

51. Information recorded on ATF Forms 4473 and/or Acquisition & Disposition logs, is required to be kept in the records of an FFL.  FFLs are required to maintain ATF Forms 4473, which are completed by the purchaser and include information regarding the name, age, current residence of the purchaser, and the purchaser's certification that he or she is not prohibited from possessing firearms.  Additionally, the purchaser must certify that their answers on ATF Forms 4473 are true, correct, and complete.

### Computer Search Methodology

52. As described in Attachment B, this application seeks permission to search for records that might be found at 1401 Hangtree or in the 2014 Tundra, in whatever form they may be found in.  One form in which the records might be found is data stored on an electronic device such as a computer or smart phone, or on digital storage media.  Thus, the warrant applied for would authorize the seizure of data or files from electronic devices and electronic storage media or, potentially, the copying of electronically stored information, all under Rule 41(e)(2)(B) of the Federal Rules of Criminal Procedure.

53. I submit that if an electronic device or storage medium is found, including cellular/smart phones, there is probable cause to believe that records described in Attachments B to the search warrants will be stored on the device or medium, for at least the following reasons:

a.   Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a device or storage medium, deleted, or viewed via the Internet.  Electronic files downloaded to a device or storage medium can be stored for years at little or no cost.  Even when files have been deleted, they can be recovered months or years later using forensic tools.  This is so because when a person "deletes" an electronic file, the data does not actually disappear; rather, it remains on the device or storage medium until it is overwritten by new data.

b.   Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the device or storage medium that is not currently being used by an active file—for long periods of time before they are overwritten.  In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

c.   Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it.  To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files.  Computer users typically do not erase or delete this evidence, because special software is typically required for that task.  However, it is technically possible to delete this information.

d.   Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

54. As further described in Attachment B, this application seeks permission to locate not only computer files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how computers were used, the purpose of their use, who used them, and when.  There is probable cause to believe that this forensic electronic evidence will be on any device or storage medium at 1401 Hangtree or in the 2014 Tundra because:

a.   Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).  Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active.  Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords.  Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use.  Computer file systems can record information about the dates files were created and the sequence in which they were created, although this information can later be falsified.

b.   As explained herein, information stored within a computer and other electronic storage media may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion.  In my training and experience, information stored within a computer or storage media (e.g., registry information, communications, images and movies, transactional information, records of

session times and durations, internet history, and anti-virus, spyware, and malware detection programs) can indicate who has used or controlled the computer or storage media. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.  The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the computer was remotely accessed, thus inculpating or exculpating the computer owner.  Further, computer and storage media activity can indicate how and when the computer or storage media was accessed or used.  For example, as described herein, computers typically contain information that log: computer user account session times and durations, computer activity associated with user accounts, electronic storage media that connected with the computer, and the IP addresses through which the computer accessed networks and the internet. Such information allows investigators to understand the chronological context of computer or electronic storage media access, use, and events relating to the crime under investigation.  Additionally, some information stored within a computer or electronic storage media may provide crucial evidence relating to the physical location of other evidence and the suspect.  For example, images stored on a computer may both show a particular location and have geolocation information incorporated into its file data.  Such file data typically also contains information indicating when the file or image was created.  The existence of such image files, along with external device connection logs, may also indicate the presence of additional electronic storage media (e.g., a digital camera or cellular phone with an incorporated camera).  The geographic and timeline information described herein may either inculpate or exculpate the computer user.  Last, information stored within a computer may provide relevant insight into the computer user's state of mind as it relates to the offense under investigation.  For example, information within

the computer may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

c.   A person with appropriate familiarity with how a computer works can, after examining this forensic evidence in its proper context, draw conclusions about how computers were used, the purpose of their use, who used them, and when.

d.   The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a storage medium that are necessary to draw an accurate conclusion is a dynamic process.  While it is possible to specify in advance the records to be sought, computer evidence is not always data that can be merely reviewed by a review team and passed along to investigators.  Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves.   Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.   Further, in finding evidence of how a computer was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.  For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

55. In most cases, a thorough search of a premises or vehicle for information that might be stored on storage media often requires the seizure of the physical storage media and later off-site review consistent with the warrant.  In lieu of removing storage media from the premises,

it is sometimes possible to make an image copy of storage media.  Imaging is the taking of a complete electronic picture of the computer's data, including all hidden sectors and deleted files.  Either seizure or imaging is often necessary to ensure the accuracy and completeness of data recorded on the storage media, and to prevent the loss of the data either from accidental or intentional destruction.  This is true as:

a.   Not all evidence takes the form of documents and files that can be easily viewed on site. Analyzing evidence of how a computer has been used, what it has been used for, and who has used it requires considerable time, and taking that much time on premises could be unreasonable.  As explained above, because the warrant calls for forensic electronic evidence, it is exceedingly likely that it will be necessary to thoroughly examine storage media to obtain evidence.  Storage media can store a large volume of information.  Reviewing that information for things described in the warrant can take weeks or months, depending on the volume of data stored, and would be impractical and invasive to attempt on-site.

b.   Computers can be configured in several different ways, featuring a variety of different operating systems, application software, and configurations. Therefore, searching them sometimes requires tools or knowledge that might not be present on the search site.  The vast array of computer hardware and software available makes it difficult to know before a search what tools or knowledge will be required to analyze the system and its data at the Search Location.  However, taking the storage media off-site and reviewing it in a controlled environment will allow its examination with the proper tools and knowledge.

c.   Records sought under this warrant could be stored in a variety of storage media formats that may require off-site reviewing with specialized forensic tools.

56. Based on the foregoing, and consistent with Rule 41(e)(2)(B) of the Federal Rules of Criminal Procedure, the warrant I am applying for would permit seizing, imaging, or otherwise copying devices and storage media, to include cellular/smart phones, that reasonably appear to contain some or all of the evidence described in the warrant and would authorize a later review of the media or information consistent with the warrant.  The later review may require techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of a hard drive to human inspection in order to determine whether it is evidence described by the warrant.

## Conclusion

57. Based on the foregoing, I respectfully submit that there is probable cause to believe that evidence, fruits, and instrumentalities of the Offenses, as described in Attachments B to the search warrants, will be found at the location and in the property described in Attachments A to the search warrants.  Accordingly, I respectfully request that the Court issue the search warrants.


_____
Special Agent Cole Flores
Bureau of Alcohol, Tobacco, Firearms and
Explosives


Signed electronically and attested by telephone under Fed. R. Crim. P. 4.1 on November 23, 2021.


_____
Mark Lane
United States Magistrate Judge

AO 93  (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

for the

Western District of Texas

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched* | ) | |
| *or identify the person by name and address)* | ) | Case No.    1:21-mj-965-ML |
| | ) | |
| 1401 Hangtree Cove | ) | |
| Cedar Park, Texas 78613 | ) | |
| | ) | |

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____ Western _____ District of _____ Texas _____ *(identify the person or describe the property to be searched and give its location)*:

Please see Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

Please see Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before _____ *(not to exceed 14 days)*

☑ in the daytime 6:00 a.m. to 10:00 p.m.     ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____ United States Magistrate Judge Mark Lane _____ . 
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

☐ for _____ days *(not to exceed 30)*     ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:     11/23/2021  6:04 pm _____     _____
*Judge's signature*

City and state:     Austin, Texas _____     United States Magistrate Judge Mark Lane
*Printed name and title*

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2)

| Return | | |
|---|---|---|
| Case No.:<br>    A-21-MJ-965-ML | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name of any person(s) seized: | | |

| Certification |
|---|
|  I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.<br><br><br>Date: _____               _____<br><div align="center">*Executing officer's signature*</div><br>               _____<br><div align="center">*Printed name and title*</div> |

**Attachment A**

*Property/Location to Be Searched*

1.      The property to be searched is in the Austin Division of the Western District of Texas, and consists of the residence of Andrew PENNINGTON, located at 1401 Hangtree Cove, Cedar Park, Texas 78613, including structures, improvements, and vehicles located on the property and the curtilage thereof.

2.      The residence is a two-story single-family home constructed of brick masonry and tan siding with a fenced back yard.  The residence is identified by signage reading "1401" affixed/centered above the garage door.  It is further described as Williamson County, Texas  Property ID # R387364, and is legally described as S7125 – Trails at Carriage Hills Sec 3 Revised, BLOCK D, Lot 11.

3.  Two photographs of the residence appear below.





**Attachment B**

***Items to be Searched for and Seized***

The search warrant authorizes officers to search for and seize evidence, fruits, and instrumentalities of the offense of dealing in firearms without a license, in violation of 18 U.S.C. § 922(a)(1)(A) ("the Offense"), including specifically the following:

a. Firearms, ammunition, or firearm parts and accessories;

b. All records, whether physical or electronic, that reference or relate to the manufacture, acquisition, possession, distribution, or disposition of firearms, including but not limited to: ATF Forms 4473, ATF Forms 3310.4, Acquisition & Disposition logs, photographs, inventories, bills of sale, records, receipts, notes, ledgers, letters, emails, call logs, contact lists, text messages, electronic communications, and notes;

c. Financial records in any form that relate to or reflect directly or indirectly the purchase or sale of firearms, ammunition, or firearm parts and accessories, or expenditures related to dealing in firearms (e.g., fees for shipping or advertising), including but not limited to bank records, credit or debit card records, tax returns, money orders, business and/or personal checks, cashier's checks, deposit slips, and account statements;

d. Any records, in whatever form, that identify aiders, abettors, co-conspirators, or facilitators of the Offense;

e. Any records, in whatever form, that reflect the names, physical or mailing addresses, email or other accounts for electronic communications, telephone numbers, or other contact information of aiders, abettors, co-conspirators, or facilitators of the Offense, including but not limited to telephone books, address books, telephone paging devices and the information stored within, cellular/smart telephones, audio tapes contained in telephone answering devices, and electronic organizers and the information stored within;

f. Photographs, audio recordings, and/or video footage, however recorded and stored, that relate to or reflect directly or indirectly any evidence, fruits, or instrumentalities of the Offense;

g. Indicia (including fictitious identification documents) of occupancy, residency, control, and/or ownership of the property or location where any evidence may be found, and of electronic devices that may be found;

h. Evidence of money and things of value that may be proceeds of the Offense, including but not limited to currency, virtual currency, assets, real property, money orders, jewelry, gems, stocks, bonds, precious metals, gold/silver coins, firearms, stored value cards, other items of value, financial instruments, bank records, titles, deeds, notes, safe deposit box keys, and storage locker receipts;

i. Material used in the packaging, concealment, and transport of firearms;

j. Aural or written communications in any form that relate to or reflect the Offense directly or indirectly;

k. Listings of electronic data, passwords, geographic location data, digital applications, social media records, social media applications, and data revealing dates, times, and locations of PENNINGTON's cell phone usage;

l. Passwords, passcodes, and other information that may be used to gain access to seized electronic devices and their contents, including but not limited to any installed or accompanying SIM card(s), internal memory, or storage media indicative of demonstrating PENNINGTON's control, custody, and access to the devices; and

m. Any information, instructions, codes, or software that may be necessary for gaining access to information stored in any seized devices.